STATE OF NORTH CAROLINA v. LYNWOOD THOMPSON (ALIAS ZEDRICK ALSTON)

No. 93A81

(Filed 25 August 1982)

1. Criminal Law § 87.2— questions asked on direct examination of rape victim not impermissibly leading

A question asked by the State's attorney on direct examination of a rape victim was not impermissibly leading because the question objected to occurred in a series of similarly phrased questions to which no objection was made, and because, even if mildly suggestive, leading questions are often permitted in the trial court's discretion when the inquiry involves delicate matters such as sexual conduct which was involved in the objected to question.

2. Rape and Allied Offenses § 6.1— lesser-included offense—failure to instruct proper

In a prosecution for kidnapping, second degree rape, second degree sexual offense, felonious larceny, forgery and uttering a forged check, the trial court properly failed to instruct on the lesser-included offenses of attempted second degree rape and attempted second degree sexual offense since there was no evidence of any actions other than the completed acts.

3. Kidnapping § 1.2— sufficiency of evidence

In a prosecution for kidnapping, among other crimes, the trial judge properly denied defendant's motion to dismiss at the close of the State's evidence where the State offered ample evidence from which the jury could conclude that defendant took a victim, by force and against her will, from a populated section of Charlotte to a remote county road in order to steal her possessions and to commit various sexual offenses against her.

Justice MARTIN took no part in the consideration or decision of this case.

BEFORE *Judge William H. Helms* and a jury, defendant was tried at the 27 April 1981 Criminal Session of UNION Superior Court. He was found guilty of kidnapping, second degree rape, second degree sexual offense, felonious larceny, forgery and uttering a forged check. The larceny, forgery and uttering a forged check convictions were consolidated for judgment and defendant

was sentenced to ten years imprisonment. The rape and sexual offense convictions also were consolidated for judgment, defendant receiving a sentence of forty years imprisonment. Finally, defendant received life imprisonment for the kidnapping conviction. All sentences are to run consecutively. Defendant appealed his kidnapping conviction to the Supreme Court which allowed his motion to bypass the Court of Appeals on the other convictions on 23 October 1981.

*Rufus L. Edmisten, Attorney General, by Richard L. Kucharski, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, and Marc D. Towler, Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

Defendant argues that his conviction for second degree rape should be reversed because the trial court abused its discretion in permitting an allegedly leading question on a critical element of the offense to be asked and answered. He also argues that the trial court erred in failing to instruct on the lesser included offenses of attempted second degree rape and attempted second degree sexual offense. Finally, he argues there was insufficient evidence of kidnapping to support conviction of that offense. We conclude there was no error in the trial.

The state's evidence elicited at trial tends to show the following:

Susan Yanus, a thirty-year-old resident of Charlotte, attended a Christmas party on 14 December 1980. She was traveling alone in her 1976 yellow Gremlin from the party to a friend's apartment for breakfast and coffee. She parked in the parking lot of the Lakes Apartments at approximately 2 a.m., and as she stepped from her car a man ran up, got in the car himself, and pushed her back into the car. Because the overhead light in the car remained on for a short time she was able to see the man and identified him at trial as the defendant. Mrs. Yanus screamed as defendant entered the car. He punched her in the face with his fist five or six times. He told her "to shut up and he said he had just killed somebody and he didn't have anything to lose." He took her keys from her and drove the car to a deserted area outside the city

limits. The car was traveling too quickly for her to jump out. She attempted to calm defendant by talking to him, but he punched her periodically during the drive. She tried, unsuccessfully, to persuade him to stop. He told her he had a knife and reiterated that he had nothing to lose.

Defendant eventually stopped the car on a deserted dirt road in Union County. He told her to take off her clothes. When she refused he began punching her again and asked "would you like to have some lead pumped into you." She removed her clothes "[b]ecause I was afraid he was going to kill me." He forced her to take his private parts into her mouth and then pushed her down on the seat and "his private parts entered [her] private parts." While she dressed he took her driver's license and checkbook from her purse.

He turned the car around and dropped her off at a small grocery. She ran to the nearest home, awakened the residents and told them what had happened. They called the police and a girlfriend of hers. When the police officer arrived she took him to the road where the car had been parked. He then took her to the hospital. Mrs. Yanus testified that the fair market value of her car was $1500, and that one of her checks made payable to Lynwood Thompson was neither in her handwriting nor signed by her.

Mr. Shahkrokh Lavassani testified that he was working at a Fast Fare store in the afternoon of 14 December. Defendant pumped five dollars' worth of gasoline into a small yellow car. He then came into the store and stood in line to purchase a canned drink and some crackers as well as the gasoline. He attempted to purchase the items with a check purportedly signed by Susan Yanus and made to Lynwood Thompson for fifty dollars. When defendant could produce no driver's license, Lavassani said he would have to call his manager. Defendant waited while Lavassani called his manager, who in turn called the police.

Lieutenant Joe Moore of the Union County Sheriff's Department testified that at about 12:30 p.m. on 14 December he went to the Fast Fare in response to the manager's call. He found defendant seated in Mrs. Yanus' Gremlin and obtained the check drawn on her account. Defendant was frisked and Mrs. Yanus' driver's

license and registration card were found on him. He had no weapon on his person.

Defendant offered no evidence.

[1] Defendant first argues that a question asked by the state's attorney on direct examination of Mrs. Yanus was impermissibly leading and the trial court erroneously overruled his objection to it. During questioning about what had occurred after defendant parked the car on the deserted road, the state's attorney asked:

Q. And after you were pushed on the seat, state whether or not his private parts entered your private parts.

MR. MORGAN: OBJECTION, Your Honor, to the leading.

A. Yes, they did.

THE COURT: OVERRULED. EXCEPTION NO. 1.

We doubt that the question as propounded is leading. "A leading question is generally defined as one which suggests the desired response and may frequently be answered yes or no. [Citations omitted.] However, simply because a question may be answered yes or no does not make it leading, unless it also suggests the proper response." *State v. Britt*, 291 N.C. 528, 539, 231 S.E. 2d 644, 652 (1977). The extent to which a question may be leading, *i.e.*, suggestive of the desired answer, depends not only on the form of the question but also on the context in which it is put. *Howell v. Solomon*, 167 N.C. 588, 83 S.E. 609 (1914). The question objected to occurred in a series of similarly phrased questions to which no objection was made:

Q. And after you were struck there on the dirt road, state whether or not your clothes were removed.

A. Yes, they were.

Q. And how is it that they were removed?

A. I removed them.

Q. And for what reason did you remove the clothing?

A. Because I was afraid he was going to kill me.

. . . .

Q. And after you removed your clothes, what, if anything, did the Defendant, Lynwood Thompson, do?

A. He grabbed my hair and pulled my head down to his lap.

. . . .

Q. Now, at the time you were taken by the hair and your head was pulled toward his lap, in what condition was the clothing of the Defendant?

A. His trousers were undone.

Q. And state whether or not any portion of his private parts were exposed at that time.

A. Yes, they were.

. . . .

Q. And thereafter, what, if anything, transpired?

A. Uh—he forced himself—himself into my mouth.

Q. State whether or not he placed his private parts—

A. Yes, he did.

Q. Into your mouth. State whether or not you consented to that act, Mrs. Yanus.

A. No, I didn't.

Q. And thereafter, what, if anything, did the Defendant do?

A. I—I pulled away from him and that's when I started screaming real bad and he said—that's when he said that's the way it's supposed to be. And I just went limp. And he dragged me and pushed me down on the seat.

Q. And after you were pushed on the seat, state whether or not his private parts entered your private parts.

MR. MORGAN: OBJECTION, Your Honor, to the leading.

A. Yes, they did.

THE COURT: OVERRULED. EXCEPTION NO. 1.

Q. State whether or not you consented to that act.

A. No, I didn't.

When considered in context it appears that the state's attorney was not attempting by the questions beginning "state whether or not" to suggest answers to the witness but was simply directing the witness's attention to various subjects of inquiry as the examiner proceeded from one subject to the next.

Assuming, arguendo, that these questions are mildly suggestive, it is well established that whether and to what extent leading questions may be propounded is a matter within the trial court's sound discretion and absent an abuse of discretion the trial court's rulings will not be disturbed on appeal. *State v. Britt, supra,* 291 N.C. 528, 231 S.E. 2d 644; *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974). Leading questions are often permitted in the trial court's discretion when the inquiry involves delicate matters such as sexual conduct. *State v. See,* 301 N.C. 388, 271 S.E. 2d 282 (1980); *State v. Henley,* 296 N.C. 547, 251 S.E. 2d 463 (1979). There was no abuse of discretion in permitting the challenged question in this case.

[2] Defendant next argues that the trial court committed reversible error in failing to instruct on the lesser-included offenses of attempted second degree rape and attempted second degree sexual offense. In order to justify submission of a lesser-included offense, however, there must be some evidence to support submission of the lesser offenses to the jury. As this Court stated in *State v. Lampkins,* 286 N.C. 497, 504, 212 S.E. 2d 106, 110 (1975):

When upon all the evidence, the jury could reasonably find the defendant committed the offense charged in the indictment, but could not reasonably find that (1) he did not commit the offense charged in the indictment and (2) he did commit a lesser offense included therein, it is not error to restrict the jury to a verdict of guilty of the offense charged in the indictment or a verdict of not guilty, thus withholding from their consideration a verdict of guilty of a lesser included offense. Under such circumstances, to instruct the jury that it may find the defendant guilty of a lesser offense included within that charged in the indictment is to invite a compromise verdict whereby the defendant would be found

guilty of an offense, which he did not commit, for the sole reason that some of the jurors believe him guilty of the greater offense. The mere possibility that the jury might believe part but not all of the testimony of the prosecuting witness is not sufficient to require the Court to submit to the jury the issue of the defendant's guilt or innocence of a lesser offense than that which the prosecuting witness testified was committed.

*See also State v. Drumgold,* 297 N.C. 267, 254 S.E. 2d 531 (1979).

In the instant case Mrs. Yanus testified positively that defendant forced her to perform fellatio against her will, and that he forced her to engage in vaginal intercourse against her will. There was no evidence of any actions other than the completed acts. Thus, the jury could properly conclude either that defendant committed the acts as described by Mrs. Yanus or that he did not. The trial court was correct in not submitting attempt charges to the jury.

[3] Finally, defendant argues that there was not sufficient evidence of each essential element of kidnapping to warrant denial of his motion to dismiss at the close of the state's evidence. The test of the sufficiency of the evidence in a criminal case is whether there is substantial evidence of all elements of the offense charged so any rational trier of fact could find beyond a reasonable doubt that defendant committed the offense. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *State v. Locklear,* 304 N.C. 534, 537-38, 284 S.E. 2d 500, 502 (1981). According to the definition of kidnapping found in G.S. 14-39(a), the state need only show "(1) an unlawful, nonconsensual restraint, confinement or removal from one place to another (2) for the purpose of committing or facilitating the commission of certain specified acts." *State v. Williams,* 295 N.C. 655, 664, 249 S.E. 2d 709, 716 (1978). Among the prohibited purposes are facilitation of the commission of a felony and "[d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed." G.S. 14-39(a)(2)-(3). The state has offered ample testimony from which the jury could conclude that defendant took Mrs. Yanus, by force and against her will, from a populated section of Charlotte to a remote county road in order to steal her possessions and to commit various sexual offenses against her. We conclude this assignment is without merit.

All other assignments of error not briefed and argued by defendant are deemed abandoned under N. C. Rule of Appellate Procedure 28(a). *State v. Samuels,* 298 N.C. 783, 260 S.E. 2d 427 (1979).

In defendant's trial we find

No error.

Justice MARTIN took no part in the consideration or decision of this case.